UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTIAN D. MEIGS,

Plaintiff,

v.                                    Case No.: 8:03-CV-2587-T-17EAJ

EXPRESSJET AIRLINES, INC.
LONG TERM DISABILITY PROGRAM FOR
PILOTS,

Defendant.

_____

### REPORT AND RECOMMENDATION

Before the court are **Plaintiff's Motion for Summary Judgment** (Dkt. 32), **Defendant's Opposition to Plaintiff's Motion for Summary Judgment** (Dkt. 35), **Plaintiff's Reply Memorandum to Defendant's Opposition**[1] (Dkt. 38-2), **Defendant's Cross-Motion for Summary Judgment** (Dkt. 28), **Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment** (Dkt. 34), **Plaintiff's Motion to Strike Affidavit of Karen Miles** (Dkt. 34), **Defendant's Opposition to Plaintiff's Motion to Strike Affidavit of Karen Miles** (Dkt. 36; **Defendant's Notice of Supplemental Authority** (Dkt. 46); and, **Plaintiff's Supplemental Citation of Authority** (Dkt. 47).  Oral argument was held on the cross-motions for summary judgment.[2]

_____

[1]  Plaintiff requested leave to file a reply to Defendant's response which was granted on March 2, 2005.  (Dkt. 40)

[2]  This matter has been referred to the undersigned by the district judge for consideration and a Report and Recommendation.  See Local Rules 6.01(b) and 6.01 (c), M.D. Fla. (Dkt. 43)

Both parties contend that there are no disputed issues of material fact.

On December 10, 2003, Plaintiff filed a complaint against Defendant under the Employee Retirement Income Security Act of 1974 ("ERISA") asserting that Defendant unlawfully terminated her disability benefits. (Dkt. 1)

**FACTUAL BACKGROUND**

Plaintiff, Christian D. Meigs, was an airline pilot for ExpressJet Airlines ("ExpressJet") beginning February 5, 1996 until February 13, 2001. She was also a participant in the ExpressJet Airlines, Inc. Long Term Disability Program for Pilots ("the Plan") during the entirety of her employment with ExpressJet.

The Plan pays benefits from a trust fund established in connection with the Plan.     (Dkt. 31, Ex. A (the "Plan"), Sec. 5.1)  All claims for benefits by pilots are to be filed with the Administrative Committee. (Plan, Sec. 4.1) The Administrative Committee is composed of three management employees and two pilot union member employees. (Dkt. 31, Ex. II-A, Miles Aff. ¶ 3)[3] As to the discretionary authority of the Administrative Committee, the Plan provides as follows:

> The Administrative Committee shall have sole, complete and absolute discretion in performing its duties and exercising its power under this

---

[3]     As discussed _infra_, the court recommends granting Plaintiff's motion to strike paragraph 16 of the Miles Affidavit. Consequently, the discussion of the factual background does not rely upon paragraph 16 of this affidavit.

>Plan including interpreting and applying the
>terms of the Plan to all matters including
>claims for benefits under Section 4.2.

(Plan, Sec. 9.7)

Pursuant to the Plan, benefits can be denied if the pilot

fails to submit proof of disability, continued disability, or fails

to undergo reasonable medical examinations or medical treatment.

(Plan, Sec. 3.6(c)(v); Plan Sec. 3.8)  Benefits can also be denied

"in the event of a misrepresentation of any material information in

the Participant's application for benefits," among other reasons.

(Plan, Sec. 3.7(h))

If a claim for benefits is denied, a pilot may request an

Administrative Committee review by filing a written statement

within sixty (60) days of receipt of the denial.  (Plan, Sec.

4.2(b))  Such request "shall include a description of the issues

and evidence he or she deems relevant."  (Id.)  A failure to raise

issues or present evidentiary information will preclude those

issues or evidence from being presented at a subsequent proceeding.

(Id.)

The Plan further provides that it "is executed and will be

performed in the State of Texas; its validity, construction and all

rights thereunder shall be governed by that state's laws to the

extent not preempted by federal law.  If any provision of this Plan

shall be in conflict with federal law, the Plan shall be

interpreted in accordance with federal law."  (Plan, Sec. 14.1)

Plaintiff ceased to work as a pilot on February 13, 2001 due

to alleged medical conditions including reflex-sympathetic dystrophy ("RSD")(also known as Complex Regional Pain Syndrome, Type I) in the right arm and wrist, as well as depression and side effects related to the taking of pain medications. (Dkt. 30, D-0087-269)

On May 30, 2001, Plaintiff filed a disability claim with the Administrative Committee for the Plan. (D-0326) Plaintiff received benefits under the Plan starting in May 2001. (D-0045-46, D-0074-78) However, Plaintiff's benefits were suspended in October 2002 due to her non-compliance with a request to participate in a medical evaluation. (Dkt. 31, Ex. C)

A medical examination was conducted by Michael A. Berry, M.D. ("Dr. Berry") on December 16, 2002. (Dkt. 30, D-0087-D-0101) Dr. Berry issued a report confirming Plaintiff's diagnosis of RSD of the upper right extremity and depression. (Id.) His report also concluded that Plaintiff's medications alone disqualified her to pilot an aircraft. (Id. at D-0087) Dr. Berry reviewed the medical records of Plaintiff's treating physicians, interviewed Plaintiff, and performed a physical examination of Plaintiff. (Id. at D-0087-102) Dr. Berry reported that Plaintiff "exercises regularly" and "used to be a competitive triathlete and would compete in about 10 triathlons per year."[4] (Id. at D-0092) Further, he indicated that "[a]t present, she jogs 5 to 6 times a

---

[4] A triathlon is an athletic contest consisting of three phases: swimming, bicycling and running. Merriam-Webster's Collegiate Dictionary 1260 (10th ed. 1999).

week for about 30 minutes," "has to wear a splint to brace her right arm," and "also swims 1 to 2 times a week."  (Id.)

After performing a physical examination of Plaintiff, Dr. Berry stated that Plaintiff:

> had a definite decreased movement in the entire right upper extremity.  There was a marked weakness in the right shoulder, biceps triceps, forearm and hand when compared to the left upper extremity.  Right hand grip strength was almost non-existent.  Right bicep was 1 inch less in diameter than the left. Right midforearm was 2 inches less in diameter than the left.  The skin over the right forearm was definitely different from the left.

(Id. at D-0099)  In his report, Dr. Berry concluded as follows:

> There is no doubt that Ms. Meigs has decreased function, skin changes, and muscle atrophy in the right upper extremity.  These changes are consistent with the criteria published for the diagnosis of Reflex Sympathetic Dystrophy (RSD) also known as Complex Regional Pain Syndrome (CRPS) Type I.  This diagnosis has been confirmed by 5 different physicians whose records are attached to this report.   In addition, Ms. Meigs is coping with the psychological results of this disorder which has had a major impact on her previously, extremely physically active lifestyle.  This is very common outcome for individuals with RSD.  I have no doubt that Ms. Meigs would do just about anything to be able to return to flying.  She has been told by all of her physicians that she is permanently disabled. I agree with them.  Due to her symptoms of muscle atrophy, and lack of strength and function in the medications she is currently taking for her Reflex Sympathetic Dystrophy have side effects that are not compatible with flying duties.  I do not believe that Ms. Meigs will regain muscular function that will ever allow her to return to flying duties.

> FINAL IMPRESSION
> 1. Reflex Sympathetic Dystrophy of the Right
> Upper Extremity - not qualified for any class
> of F.A.A. Medical Certificate.
> 2. Depression, secondary to #1 - not qualified
> for any class of F.A.A. Medical Certificate
> 3.  Asthma, allergy induced, in remission -
> treated with periodic medications, qualified
> for flying duties.

(Id. at D-0100-101)

Based on Dr. Berry's report, the Administrative Committee reinstated Plaintiff's benefits on January 7, 2003, including retroactive benefits for the period that benefits had been discontinued. (Dkt. 30, D-0078)  The decision of the Administrative Committee was unanimous.  (Miles Aff. ¶ 11)

In May 2003, the Plan received an anonymous e-mail which alleged that Plaintiff had competed in numerous triathlons. (Miles Aff. ¶ 13)  The Plan later identified the author of the email as William Meigs, Plaintiff's former husband.  (Miles Aff. ¶ 14; Dkt. 30, Dkt. 30, D-0059-60) On July 18, 2003, Jean Wilson ("Wilson"), counsel to the Administrative Committee, interviewed Mr. Meigs. (D-0059-60)

The Plan subsequently confirmed Plaintiff's participation in the Half Vineman Triathlon in July 2001 and the St. Anthony's Triathlon in April 2003 and the Plan provided the information about her participation in these events to Dr. Berry.  (Dkt. 31, Ex. B, F, H)

Plaintiff's participation in the July 2001 Half Vineman Triathlon occurred nineteen months prior to the December 2002

medical examination; Plaintiff's participation in the April 2003 St. Anthony's Triathlon occurred four months after Dr. Berry's medical examination. (Id.)

Thereafter, Dr. Berry was interviewed over the phone by Robin Curtis ("Curtis"), counsel to the Administrative Committee, regarding Plaintiff's triathlon participation and her disability claim. (Miles Aff. ¶ 17; Dkt. 31, Ex. F, H) Dr. Berry verbally reported to Curtis that, in his opinion, Plaintiff's participation in two triathlons was inconsistent with her statements to him. (Id.) In turn, Curtis reported her conversation with Dr. Berry to Wilson, who in turn reported this information to the Administrative Committee. (Id.)

Wilson also advised the Administrative Committee that Mr. Meigs alleged that Plaintiff had trained for and participated in various triathlons, and that Mr. Meigs had observed Plaintiff bicycling 40 miles through the sand twice a week, swimming, running, landscaping, typing and painting. (Dkt. 31, Ex. H; Miles Aff. ¶ 14; Dkt. 30, D-0059)

In deciding to terminate Plaintiff's benefits, the Administrative Committee considered the following: (1) the results of Plaintiff's participation in the two triathlons; (2) the physical requirements and preparation associated with participating in the triathlons; (2) Dr. Berry's opinion regarding Plaintiff's disabilities and participation in the two triathlons; (3) Mr. Meigs' conversation with Wilson regarding Plaintiff's training and

7

activities; and (4) Dr. Berry's December 16, 2002 medical report. (Dkt. 31, Ex. F, H; Dkt. 30, Miles Dep. at pp. 72, 76, 83)

By letter dated August 11, 2003, the Administrative Committee advised Plaintiff that it had "learned that you are actively participating in triathlons and other activities incompatible with your claimed disability." (Dkt. 31, Ex. F) The letter stated that the Administrative Committee was not able to "reconcile [her] representation that [she] had 'zero grip strength' and 'zero range of motion' in [her] wrist with [her] ability to bike for 40 kilometers (in one hour and ten minutes) and swim for 1.5 kilometers (in 33 minutes)." (Id.) The letter further stated that the Administrative Committee

> has confirmed with the doctor who performed your IME that your ability to train and compete in this recent triathlon is not compatible with your representation that you have zero grip strength and zero range of motion in your wrist. Hence, the Committee has no choice but to conclude that the information that you provided as part of the IME on which the Committee based its decision to reinstate your benefits was false and misleading.

(Id.)

Plaintiff, in a letter dated August 22, 2003, protested the decision of the Administrative Committee, but failed to provide additional evidence to support her claim. (Dkt. 31, Ex. G) Thereafter, the Committee affirmed its decision to terminate benefits in an October 20, 2003 letter to Plaintiff. (Dkt. 31, Ex. H)

**DISCUSSION**

I.  <u>Motion to Strike Affidavit</u>

As a preliminary matter, this court will address Plaintiff's motion to strike paragraph 16 of the Miles affidavit.

Pursuant to Federal Rules of Civil Procedure 56(e), an affidavit must be based upon personal knowledge and must set forth admissible evidence.  The general rule is that inadmissible hearsay in an affidavit cannot be considered in summary judgment challenges. <u>Macuba v. DeBoer</u>, 193 F.3 1316, 1322 (11th Cir. 1999).  An affidavit must be stricken if it is not based on personal knowledge.  <u>Johnson v. Scotty's Inc.</u>, 119 F. Supp. 2d 1276, 1281 (M.D. Fla. 2000).

Plaintiff moves to strike paragraph 16 of the Miles affidavit on the grounds that the affidavit is contradictory to Miles' deposition testimony and therefore, the affidavit is a "sham affidavit."  Also, Plaintiff argues the affidavit should be stricken because it is based on inadmissible hearsay.  (Dkt. 34 at 8-10) Paragraph 16 of the affidavit provides:

> Robin Curtis, co-counsel to the Administrative Committee, had also interviewed Dr. Michael A. Berry at my request and informed him of Plaintiff's exercise activities, providing him with the documented results of Plaintiff's triathlon participation.  Dr. Berry indicated that Plaintiff had represented to him that upon onset of her disability, which was February 2001, she ceased participating in triathlons. She also represented, among other things, that her right hand grip strength was almost nonexistent, that her exercise activity was limited to some jogging and swimming, and that

> she was taking strong medications.  Dr. Berry
> opined that Plaintiff's exercise activities
> would be impossible if her representations to
> him were true.  The Administrative Committee
> was informed of Dr. Berry's opinion, and the
> information on which he based his opinion, by
> Ms. Wilson.

(Dkt. 31, Ex. IIA at 4)

In response to Plaintiff's motion to strike, Defendant merely alleges that the Miles affidavit is consistent with Miles' deposition testimony.  (Dkt. 36)  Because the Miles affidavit does not contradict her deposition testimony, Defendant argues that Plaintiff has failed to show the affidavit is a "sham affidavit." Notably, Defendant does not address the hearsay issue.  Rather, Defendant concedes that the affidavit is "based on what she [Miles] understood to have been provided to Dr. Berry and what she understood to have been Dr. Berry's statements" based on Miles' conversation with Wilson.   (Dkt. 36 at 3)  Further, Defendant asserts that Plaintiff's summary of Miles' deposition testimony in "Plaintiff's Statement of Undisputed Facts," is "almost identical" to the language used in the Miles affidavit.  Because Plaintiff's statement and the Miles affidavit are "wholly consistent," Defendant maintains that the challenged paragraph of the Miles affidavit should not be stricken.  Defendant's arguments are without merit.

First, paragraph 16 of Miles affidavit contains hearsay statements.  In fact, the Miles affidavit relies upon double or triple hearsay statements; however, only paragraph 16 is the subject of the motion to strike.  According to the affidavit, Dr. Berry told

Curtis that Plaintiff made inconsistent statements during the medical examination.   Thereafter, Curtis informed Wilson of her conversation with Dr. Berry.  Wilson, in turn, advised Miles and the Administrative Committee of Dr. Berry's comments to Curtis.

Defendant admits that Miles' deposition testimony is not based upon Miles' personal knowledge, but rather "'[i]t was a verbal conservation relayed via Jean Wilson that Robin [Curtis] had with Dr. Berry.'" (Dkt. 36 at 2-3, citing Miles Dep. at pp. 76-77)

Defendant fails to demonstrate any valid grounds for permitting the use of such hearsay statements.  For instance, Defendant does not allege that the hearsay statements fall within an exception to the hearsay rule, or do not constitute hearsay at all (because they are not offered to prove the truth of the matter asserted).  Here, Defendant relies upon the Miles affidavit to prove the truth of the matter asserted: that Dr. Berry stated that Plaintiff made misrepresentations to him. Hence, the inadmissible hearsay statements in paragraph 16 may not be considered in a summary judgment motion.[5]

Finally, Plaintiff's summary of Miles' deposition testimony in "Plaintiff's Statement of Undisputed Facts" does not provide a valid

---

[5] However, the Miles affidavit is not a "sham affidavit," as defined by the court in Tippers v. The Chelates Corp., 805 F.2d 949, 954 (11th Cir. 1986).  Miles' affidavit does not flatly contradict her deposition testimony.  However, because the motion to strike should be granted on hearsay grounds, it is not necessary to further evaluate this argument.

basis for the admissibility of the Miles affidavit.   Paragraph 24

of Plaintiff's statement provides:

> Sometime later, Dr. Berry verbally reported to
> Robin Curtis, the supervisor of attorney Jean
> Wilson, over the phone that Ms. Meigs'
> participation in the Vineman in July, 2001 and
> the St. Anthony's triathlon on April 27, 2003
> were not consistent with her statements to him
> during the IME examination on December 16,
> 2002. See Deposition of Karen Miles, p. 65, l.
> 19; p. 66, l.9; p.81, ll. 10-15.   At some
> unknown time, the Plan typed up Dr. Berry's
> verbal conclusion in an undated document.  AR-
> D-0048.

(Dkt. 32 at 7)

Contrary to Defendant's position, the summary of Miles'

testimony cited by Plaintiff is not "almost identical" to paragraph

16 of the Miles affidavit.[6]  Plaintiff's summary of Miles' testimony

is limited to:  Curtis' conversation with Dr. Berry and Dr. Berry's

opinion that Plaintiff' participation in the triathlons was "not

consistent with her statements to him during the IME examination on

December 16, 2002." (Dkt. 32 at 7) In contrast, the Miles affidavit

states that Plaintiff represented to Dr. Berry that: (1) Plaintiff

had ceased participation in triathlons with the onset of her

---

[6] As to Plaintiff's citations to Miles' deposition, Miles
testified that Wilson independently confirmed Plaintiff's
participated in triathlons in July 2001 and April 2003. (Dkt. 30,
Miles Dep. at p. 65, l. 19)  Miles further testified that Curtis
spoke to Dr. Berry in either July or July of 2003. (Id. at 66,
l.9)  On page 81, lines 10-15, Plaintiff's counsel asked Miles
whether it was her understanding that in August 2003, "Dr. Berry's
opinion of inconsistency with his prior opinion was based entirely
on his impressions of her physical abilities to do something like
a triathlon."  (Id. at 81)  Miles answered in the affirmative.
(Id.)

disability, (2) her right hand grip strength was almost nonexistent, (3) her exercise activity was limited to jogging and swimming, and (4) and that she was taking strong medications.  (Dkt. 31 Ex. IIA at 4)  Miles also states in her affidavit that, in Dr. Berry's opinion, Plaintiff's exercise would be impossible if Plaintiff's representations to him were true.[7]  Therefore, the Miles affidavit is not identical to her deposition testimony.

However, because paragraph 16 of the Miles affidavit contains inadmissible hearsay, it should not be considered by this court in support of the summary judgment motion filed by Defendant. Accordingly, the court should grant Plaintiff's motion to strike paragraph 16 of the Miles affidavit.

II.  <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Rule 56 ( c), Fed. R. Civ. P.; <u>see also</u> <u>Chelates Corp. v. Citrate</u>, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of demonstrating to the court that it has met this standard.  477 U.S. at 323.  Under Rule 56(e), Fed. R. Civ. P., once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for

---

[7] In addition to the differences between Plaintiff's summary of Miles' testimony and the Miles affidavit, Plaintiff strongly objects to the assertions in the Miles affidavit regarding Plaintiff's alleged misrepresentations.  Plaintiff's citation to Miles' deposition testimony does not constitute Plaintiff's concession that any alleged inconsistency is a material misrepresentation.

trial. <u>Id.</u> at 324.

The court may not decide a genuine factual dispute in ruling on a motion for summary judgment, but rather must decide if material factual issues are present. <u>Fernandez v. Bankers National Life Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990)(citations omitted). The court must judge all evidence in the light most favorable to Plaintiff as the nonmoving party, and all justifiable inferences must be drawn in the Plaintiff's favor. <u>Id.</u> However, the evidence must also be viewed within the scope of the evidentiary burden of the respective parties under the substantive law of the case. <u>Fernandez</u>, 906 F.2d at 564, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  If, under this standard, the evidence can be considered such that a reasonable jury could find for the plaintiff, summary judgment is inappropriate. <u>Fernandez</u>, 906 F.2d at 564, <u>citing</u> <u>Chelates</u>, 477 U.S. at 324.

III.   <u>Appropriate Standard of Review in ERISA case</u>

Under ERISA, the Plaintiff has the burden of showing that she is entitled to benefits under the plan. <u>Stvartak v. Eastman Kodak Co.</u>, 945 F. Supp. 1532, 1536 (M.D. Fla. 1996), <u>aff'd</u>, 144 F.3d 54 (11th Cir. 1998).  This burden is the same whether or not the administrator denies a claim initially or decides to discontinue benefits after initially approving them. <u>See</u> <u>Hufford v. Harris Corp.</u>, 322 F. Supp. 2d 1345, 1360(M.D. Fla. 2004)(claimant retains burden of proving continued disability after benefits are discontinued).

14

A denial of benefits under an ERISA plan must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

In this case, the parties agree that the arbitrary and capricious standard applies to the Administrative Committee's decision to terminate Plaintiff's benefits. (Dkt. 33 at 2; Dkt. 29 at 3) Under the terms of the Plan, the Administrative Committee has the "sole, complete and absolute discretion" to determine a pilot's eligibility for benefits. (Plan, Sec. 9.7) In light of this provision, the court must review the Plan's denial of benefits to Plaintiff under the arbitrary and capricious standard. HCA Health Services of Georgia v. Employers Health Ins. Co., 240 F.3d 982, 992 (11th Cir. 2001).

Application of the arbitrary and capricious standard requires the court to look only to the facts known to the administrator at the time the decision was made to deny Plaintiff coverage. Lee v. Blue Cross/Blue Shield, 10 F.3d 1547, 1550 (11th Cir. 1994); Rosser-Monahan v. Avon Prods., 227 F.R.D. 695, 697-98 (M.D. Fla. 2004). In applying the arbitrary and capricious standard to a plan administrator's decision, the court's role is limited to determining whether the contested interpretation was made rationally and in good faith. Blank v. Bethlehem Steel Corp., 926 F.2d 1090, 1093 (11th Cir.), cert. denied, 502 U.S. 938 (1991).   The arbitrary and

capricious standard is applied in judging the administrator's factual conclusions. Buckley v. Metropolitan Life, 115 F.3d 936, 940 (11th Cir. 1997). Under this deferential standard, an administrator's decision to terminate an employee's disability benefits will be upheld if there is a reasonable basis for the decision. Turner v. Delta-Family Care Disability, 291 F.3d 1270, 1271 (11th Cir. 2002); see also Shannon v. Jack Eckerd Corp., 113 F.3d 208, 210 (11th Cir. 1997), cert. denied, 522 U.S. 1111 (1998)(decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision).

IV.   The Parties' Arguments

Plaintiff moves for summary judgment contending that Defendant improperly terminated her disability benefits.  First, Plaintiff argues that she made no misrepresentations to Dr. Berry regarding her level of physical activity.  According to Plaintiff, the failure to advise Dr. Berry in December of 2002 about her triathlon activity is not a misrepresentation.  Plaintiff contends that the Administrative Committee had no evidence that Plaintiff was training for a triathlon at the time of her interview with Dr. Berry, and the Administrative Committee inappropriately relied upon assumptions and unsubstantiated allegations by Plaintiff's former spouse when it terminated Plaintiff's benefits.

Second, Plaintiff asserts that, even assuming that misrepresentations were made, the misrepresentations to Dr. Berry were not material.  Because Dr. Berry's opinion that Plaintiff was

disabled was based upon a review of medical records and a physical examination of Plaintiff, Plaintiff argues that her verbal representations about her triathlon activities were not material to the disability determination. Moreover, Plaintiff alleges that Dr. Berry knew about her past physical activities as a triathlete from his review of her medical records.

Third, Plaintiff contends she is entitled to summary judgment because the Administrative Committee relied upon Dr. Berry's verbal opinion and not on the medical records of Plaintiff's other treating physicians in terminating her benefits. In essence, Plaintiff argues that her medical records demonstrate that she was disabled as defined by the Plan and ineligible to pilot an aircraft. As such, Plaintiff argues that the Administrative Committee's decision was arbitrary and capricious.

In its cross-motion for summary judgment, Defendant contends that its decision to rescind benefits to Plaintiff was not arbitrary or capricious and was based upon objective evidence. Although Defendant initiated the reconsideration of benefits based upon allegations from Plaintiff's former spouse, Defendant emphasizes that it independently verified Plaintiff's triathlon participation. Defendant argues that it verified with Dr. Berry that Plaintiff's triathlon participation was inconsistent with Plaintiff's representations to Dr. Berry during her physical examination. Therefore, Defendant contends that Plaintiff's omissions and non-disclosures regarding her physical activities, her grip strength,

17

and her medication regimen were material misrepresentations.

Defendant also asserts that Plaintiff's medical records are irrelevant because Plaintiff's benefits were terminated based upon Plaintiff's material misrepresentations, not on whether Plaintiff was disabled.  Finally, Defendant contends that Plaintiff's failure to proffer an affidavit countering allegations of material misrepresentation supports Defendant's position that the decision of the Administrative Committee was not arbitrary and capricious.

V.   Choice of Law

Before determining whether Plaintiff's alleged misrepresentations justify the termination of her benefits, there is a threshold question of law - not raised by either party - as to whether state or federal law governs this action.

During oral argument, the undersigned raised the choice of law issue and gave the parties and opportunity to submit additional citations of law on the topic.  Those  were filed and have been considered.  (Dkts. 46 and 47)

ERISA does not specifically address the effect of misrepresentations in an insurance application for enrollment in a long term disability plan.  Where ERISA is silent on an issue, a court may look to federal common law.  Hauser v. Life General Security Insurance Co., 56 F.3d 1330, 1333 (11th Cir. 1995).  In fashioning federal common law, a federal court may borrow from state law where appropriate and may be guided by the policies expressed in ERISA and other federal labor law.  Id.  Moreover, the federal

18

common law of rights and obligations concerning entitlement to insurance benefits embodies common sense canons of contract interpretation. <u>Burnham v. Guardian Life Ins. Co.</u>, 873 F.2d 486, 489 (1st Cir. 1989)

In this case, the Plan provides that Texas law shall govern the validity, construction and all rights under the Plan "to the extent not preempted by federal law." (Plan, Sec. 14.1) "Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." <u>Buce v. Allianz Life Insurance Co.</u>, 247 F.3d 1133, 1149 (11th Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 1065 (2001). In deciding whether to apply a choice of law provision, courts will determine if the state law is compatible with ERISA and consistent with federal common law. <u>Buce</u>, 247 F.3d at 1148(application of Georgia law was not "subversive to ERISA policy").[8] The court, thus, considers whether Texas law is consistent with ERISA and federal common law.

Under Texas law, in order to prove a material misrepresentation supporting rescission or denial of a claim, an insurer must prove:

---

[8] <u>See</u> <u>also</u> <u>Prudential Insurance Co. of America v. Doe</u>, 140 F.3d 785 (8th Cir. 1998)(application of state law would violate provisions of ERISA); <u>Morton v. Smith</u>, 91 F.3d 867 (7thCir. 1996)(same); <u>Allstate Ins. Co. v. My Choice Med. Plan for LDM Techs., Inc.</u>, 298 F. Supp. 2d 651, 657 (E.D. Mich. 2004)(court declined to apply Michigan law because it would contravene a primary goal of ERISA); <u>Johnson v. General Am. Life Ins. Co.</u>, 178 F. Supp. 2d 644, 651 n2 (W. D. Va. 2001)(court will consider whether state law conflicts with federal common law); <u>West v. Aetna Life Ins. Co.</u>, 171 F. Supp. 2d 856, 898 (N.D. Iowa 2001)(same).

(1) the making of the representation; (2) the falsity of the representation; (3) reliance on the representation by the insurer; (4) intent to deceive on the part of the insured in making the representation; and (5) the materiality of the representation. <u>Security Southwest Life Ins. Co. v. Gomez</u>, 768 S.W.2d 505, 507-08(Tex. Civ. App. 1989). Thus, under Texas law, an insurer must demonstrate that the insured had an intent to deceive in making the misrepresentation. <u>Clyde A. Wilson International Investigations, Inc. v. Travelers Insur. Co.</u>, 959 F. Supp. 756, 759 (S. D. Tex. 1997).

A majority of jurisdictions follow the rule that a material misrepresentation need not have been fraudulently made to avoid a policy. <u>Heidelberg v. National Foundation Life Ins. Co.</u>, No. Civ.A 00-877, 2001 U.S. Dist. LEXIS 2770* 4 (E. D. La., March 6, 2001)(majority rule in this country does not require that material misrepresentation be made with intent to deceive or defraud); <u>Clyde Wilson</u>, 959 F. Supp. at 759(same); <u>Tingle v. Pacific Mutual Ins. Co.</u>, 837 F. Supp. 191, 193 (W.D. La. 1993)(same). In fashioning federal common law, federal courts are not required to follow majority rule, but it is significant that the intent behind ERISA's preemption provision was to eliminate the risk of conflicting and inconsistent regulations of employee benefit plans. See <u>Pilot Life Insurance Co. v. Dedeaux</u>, 481 U.S. 41, 46 (1987).

Jurisdictions holding that a material misrepresentation will void an insurance policy, regardless of the good or bad faith of the

insured, are in accord with general contract law.  <u>Davies v.</u>
<u>Centennial Life Ins. Co.</u>, 128 F.3d 934, 943 (6th Cir. 1997); <u>Tingle</u>,
837 F. Supp. at 193.  Under generally accepted contract principles,
the only relevant inquiry is the materiality of the
misrepresentation.  <u>Clyde Wilson</u>, 959 F. Supp. at 759.  Thus, in
applying federal common law, courts have held that an insurer need
only prove that the insured made a material misrepresentation that
justifiably induced the insurer to provide coverage or affected the
insurer's acceptance of risk.  <u>See</u> <u>Hauser</u>, 56 F.3d at 1333-34 (11th
Cir. 1995).[9]

Unlike the situation presented in <u>Buce</u>, applying Texas law on
material misrepresentation in this case would undermine the goals
and policies of ERISA.  The intent to deceive requirement involves
an inquiry into the insured's subjective intent; therefore, it is
inconsistent with ERISA's goal of objective standards, consistency
and uniformity in judicial decisions.  <u>Clyde Wilson</u>, 959 F. Supp.
at 763.  Requiring insurers to prove fraudulent intent would
increase the total cost of all premiums because insurers would have
to depend entirely on independent examinations to assess their
relative risk.  <u>Tingle</u>, 837 F. Supp. at 193.  Further, the

---

[9] <u>See also</u> <u>Davies</u>, 128 F.3d at 943; <u>Riordan v. Golden Rule Ins.</u>
<u>Co.</u>, 2005 U.S. Dist. LEXIS 10673 * 18 (S.D. Iowa May 23, 2005);
<u>Heidelberg</u>, 2001 U.S. Dist. LEXIS 2770* 4; <u>Jones v. United States</u>
<u>Life Ins. Co.</u>, 12 F. Supp.2d 383, 389 (D. N.J. 1998) <u>Tingle</u>, 837 F.
Supp. at 193 (W.D. La. 1993); <u>but</u> <u>see</u> <u>Provident Life & Accident</u>
<u>Insurance Co.</u>, 364 F.3d 634, 641 (5th Cir. 2004)(federal common law
requires party to prove misrepresentation made with intent to
deceive).

application of Texas law on material misrepresentation is inconsistent with generally accepted contract principles. Hence, applying the choice of law provision in this instance would be unreasonable and unfair.

While the court recognizes that some states, including Texas, require proof of fraudulent intent, the majority approach is the most logical and equitable alternative to further ERISA's principal goal of creating uniform and objective standards and facilitating the availability and affordability of insurance. The implications of the choice of law analysis is that to prove Plaintiff made a material misrepresentation, Defendant need not show actual intent to deceive by Plaintiff.

VI.   <u>Material Misrepresentation</u>

A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question. <u>Shipley v. Arkansas Blue Cross and Blue Shield</u>, 333 F.3d 898, 904 (8th Cir. 2003). The Eleventh Circuit has held that a misrepresentation by an applicant for benefits under an insurance plan governed by ERISA is a material misrepresentation if the misstatement affects the insurer's acceptance of risk. <u>See</u> <u>Hauser</u>, 56 F.3d at 1334; <u>Fernandez</u>, 906 F.2d at 565-67.

Under the terms of Plaintiff's Plan, benefits can be denied "in the event of a misrepresentation of any material information in the Participant's application for benefits." Defendant argues that Plaintiff's misrepresentations to Dr. Berry during her physical

22

examination were part of the application process.   (Dkt. 48 at pp. 33-35)

Both parties have cited cases dealing with a material misrepresentation or omission in the context of a written application for insurance.   (Dkt. 46 and 47)  However, neither party has cited cases, and independent research has not revealed any cases, which discuss a material misrepresentation or non-disclosure by the insured during a physical examination.[10]   Consequently, in analyzing the alleged material misrepresentations in this case, this court will rely upon analogous cases discussing misrepresentations or omissions on a written application.

To determine whether a misrepresentation is material, an examination of Mims v. Old Line Life Ins. Co., 46 F. Supp. 2d 1251, 1252-53 (M.D. Fla. 1999) is beneficial.   Mims involved a life insurance policy issued to a policy holder, who died from cardiopulmonary arrest eights months after the policy was issued. As part of the underwriting process, the insured completed and signed a medical form which indicated the insured was in good health and had a negative medical history.   Id. at 1253.   Except for a hospitalization for childbirth, tubal ligation, and a general examination, the insured answered that she had not seen a doctor in

---

[10] Plaintiff cites Westchester Fire Ins. Co. v. English, 543 S.W. 2d 407 (Tex. Civ. App. 1976), which deals with an oral misrepresentation by the insured for home owners insurance. Because the state court applied Texas law on material misrepresentation and required a showing of intent to deceive, this case is inapposite.

the past five years.

In <u>Mims</u>, the court held that the insurer's misrepresentations were material as a matter of law because the insured's medical records and the testimony of her treating physician revealed that she failed to disclose twenty visits or diagnoses for numerous diseases, disorders and symptoms.  <u>Id.</u> at 1259; <u>see</u> <u>ITT Life Ins. Co. v. Hernandez</u>, 651 F. Supp. 1408, 1409 (S.D. Fla. 1987)(where facts necessary to determine the risk are blatantly and deliberately inaccurate there can be little doubt that these false statements are material).  In addition, the <u>Mims</u> court held that an insurer may establish materiality of misrepresentations through the affidavit of an underwriter.[11]  <u>Mims</u>, 46 F. Supp.  at 1260-61; <u>accord</u> <u>National Union Fire Ins. Co. v. Sahlen</u>, 999 F.2d 1532, 1536(11th Cir. 1993)(deposition testimony of underwriter established that false financial documents provided by insured were a material misrepresentation because underwriter would not have offered the policy had he known the insured's true financial state).[12]

---

[11]    The defendant in <u>Mims</u> submitted the affidavit of an insurance company employee who stated that the insured's failure to disclose visits to hospitals, in and of itself, was a material misrepresentation and would have caused the defendant to decline to issue a policy.   Of note, the court emphasized that plaintiff failed to offer contradictory evidence, through discovery or by a counter-affidavit, to rebut the company employee's statement that the failure to disclose her past medical history and treatment was a material misrepresentation.  <u>Id.</u> at 1260-61.

[12]    Similarly, in <u>Shipley</u>, the Eighth Circuit held that an insurer may also prove the materiality of a misrepresentation by citing to the company underwriting policies.   In that case, the

Thus, courts have relied on plaintiff's medical records, affidavits of insurance underwriters, and underwriting guidelines to establish that misrepresentations by an insured are material misrepresentations. <u>See</u> <u>also</u> <u>Jones</u>, 12 F. Supp. at 390; <u>Clyde A. Wilson</u>, 959 F. Supp. at 760-62.

However, where there is a factual dispute concerning a material misrepresentation, summary judgment should be denied. <u>Hauser</u>, 56 F.3d at 1335[13]; <u>Fernandez</u>, 906 F.2d at 564. Furthermore, where an insured did not answer the application to the best of his knowledge and belief, the jury must decide whether the statements were material to the insurer's acceptance of risk and whether the insurer would have issued the policy had it known the true facts. <u>Hauser</u>, 56 F.3d at 1335.

Similarly, in <u>Fernandez</u>, the Eleventh Circuit held that factual

---

insured failed to disclose a diagnosis of emphysema. 333 F.3d at 905. Because the company underwriting guidelines relating to emphysema would have resulted in a different treatment of plaintiff's application for benefits, the court held the failure to disclose past medical history was a material misrepresentation. <u>Id.</u>

[13] In <u>Hauser</u>, the Eleventh Circuit remanded the case to the district court for trial because there were factual disputes regarding an insured's answers to questions on an application form. <u>Hauser</u>, 56 F.3d at 1335. Where an insurance company uses the language "to the best of my belief and knowledge" in an insurance application, the court will inquire into whether the applicant answered the questions to the best of his knowledge and belief. <u>Id.</u> at 1335. Based upon the facts before the court, the assessment of whether plaintiff answered to the best of his knowledge and belief involved "a credibility determination that may only be made by a jury." <u>Id.</u> Plaintiff's application for disability benefits is apparently not part of the record. (Dkt. 48 at p. 34)

issues prevented summary judgment as to materiality of an applicant's misrepresentation on his insurance form. <u>Fernandez</u>, 906 F.2d at 567-68. Specifically, the court held that when a dispute concerning the materiality of a misrepresentation or non-disclosure arises, the issue is to be decided by a finder of fact, not by the court on a motion for summary judgment. <u>Id.</u>[14]

A.   <u>Did Plaintiff Make Material Misrepresentations?</u>

In support of its motion for summary judgment, Defendant alleges three material omissions or non-disclosures by Plaintiff. First, Defendant argues that Plaintiff misrepresented her physical condition and limitations to Dr. Berry during the medical examination. According to Defendant, "Dr. Berry indicated that Plaintiff represented to him that since she became disabled, i.e. February 2001, she had ceased triathlon competition and the only exercise she engaged in had been limited to jogging and swimming, nothing more." (Dkt. 29 at 7) Second, Defendant asserts that "Dr. Berry opined that given Plaintiff's physical activity (which necessarily required the use of her right wrist), her representations to him regarding her inability to use her right extremity were also false." (<u>Id.</u>) Finally, Defendant contends that

---

[14] <u>See</u> <u>also</u> <u>Heidelberg</u>, 2001 U.S. Dist. LEXIS 2770 *8(because there were genuine issues of material fact as to the chain of events that led to medical tests and the insured's knowledge about the result of medical tests, summary judgment was denied); <u>Freidin v. Pan-American Life Insurance Co.</u>, No. 91-6941-CIV-ZLOCH, 1992 U.S. Dist. LEXIS 20703 *12-15(S.D. Fla. Dec. 28, 1999)(whether insured made a material misrepresentation about her medical condition was in dispute and would be resolved at trial).

Dr. Berry "considered Plaintiff's representations concerning her medication regime to be inconsistent with her triathlon results." (Id.)

To support its position that Plaintiff made these material misrepresentations, Defendant relies upon the following evidence: (1) Dr. Berry's medical report; (2) Dr. Berry's verbal opinion that Plaintiff's participation in triathlons was inconsistent with Plaintiff's statements to him; (3) Dr. Berry's affidavit; (4) information obtained from Plaintiff's former husband about Plaintiff's activities; (5) the Plan's independent verification of Plaintiff's participation in two triathlons; and (6) the affidavit and deposition testimony of Miles, a member of the Administrative Committee.[15] As previously stated, paragraph 16 of the Miles affidavit should be stricken because it is based on hearsay.

The court's role is not to determine whether Plaintiff is disabled or whether Plaintiff's disability meets the Plan's requirements for loss of license disability.[16] The Administrative Committee based its decision to terminate Plaintiff's benefits on

---

[15] Defendant relies upon this same evidence to prove that Plaintiff made material misrepresentations concerning her grip strength and medical regimen.

[16] Specifically, Plaintiff asserts that the Administrative Committee's decision was arbitrary and capricious because Plaintiff's medical records establish that Plaintiff is disabled as defined by the Plan. Plaintiff contends that she is disabled because her medical regimen and depression disqualify her from piloting an aircraft. In light of the court's limited review in this case, it is unnecessary to address Plaintiff's arguments.

Plaintiff's material misrepresentations to Dr. Berry during her physical examination.[17]   Consequently, the court may ask only whether the Administrative Committee's decision to deny Plaintiff benefits based on Plaintiff's material misrepresentations has a rational and good faith basis.  Cagle v. Bruner, 112 F.3d 1510, 1518 (11th Cir. 1997).

> 1.   Statement by Plaintiff Concerning
>        Her Physical Activities and Limitations

Citing Payne v. Ryder System, Inc. Long Term Disability Plan, 173 F.R.D. 537, 542 (M.D. Fla. 1997), Defendant contends the Administrative Committee based its decision on objective evidence, like Plaintiff's medical records.  Defendant asserts that Dr. Berry's medical report establishes that Plaintiff's non-disclosures regarding her physical condition, in particular her alleged triathlon training and participation, was a material misrepresentation.  The report provides in pertinent part that:

> She exercises regularly.  She used to be a
> competitive triathlete and would compete in
> about 10 triathelons [sic] per year.  At
> present, she jogs 5 to 6 times a week for about
> 30 minutes.  She has to wear a splint to brace
> her right arm.  She also swims 1 to 2 times a
> week.

(Dkt. 30, D-0092)  Defendant asserts that Plaintiff consciously hid her triathlon competitions from Dr. Berry.

---

[17] Although the Administrative Committee noted that Plaintiff's physical activities could aggravate her condition and hinder her rehabilitation, Defendant acknowledges that "the reason for the denial of Plaintiff's benefits rested soundly on her misrepresentation."  (Dkt. 29 at 8 n.4)

As previously stated, the Plan confirmed Plaintiff's participation in the Half Vineman Triathlon in July 2001 and the St. Anthony's Triathlon in April 2003.  Dr. Berry's examination of Plaintiff took place in December 2002.

Next, Defendant cites an unsigned and undated affidavit of Dr. Berry to support its argument that Plaintiff's participation in triathlons was inconsistent with Plaintiff's statements to Dr. Berry.  (Dkt. 28 at 4, ¶ 15)  Although Defendant admits that this affidavit was created after the Administrative Committee made its decision, Defendant maintains that the contents of this affidavit may be considered as part of the administrative record.[18]  (Dkt. 48 at 36-39; Dkt. 35 at 3)  However, the unsigned affidavit, which is not part of the administrative record, cannot be considered by this court.  Lee, 10 F.3d at 1550 (court is required to look only to the facts known at the time of the decision); Vega v. National Life Ins. Services, Inc., No. H-96-3428, 1997 U.S. Dist. LEXIS 24159 *6(S.D. Tex. June 23, 1997)(doctor's affidavit that was not part of the administrative record will not be considered by the court).

Defendant also relies upon the conversation between Plaintiff's

---

[18] Defendant asserts that the deposition testimony of Miles demonstrates that Dr. Berry's affidavit reflects Dr. Berry's opinion as known by the Administrative Committee at the time of its decision.  (Dkt. 35 at 3; Dkt. 48 at p. 37-38) However, the deposition testimony cited by Defendant merely indicates that Miles believes the unsigned affidavit documents the conversation between Dr. Berry and Curtis, not what was known by the Administrative Committee.  (Dkt. 30, Miles Deposition at p. 113)  Furthermore, Miles admits that, since she was not a party to the conversation between Dr. Berry and Curtis, she does not know whether Dr. Berry discussed all the items in the affidavit with Curtis.  (Id.)

former husband, Mr. Meigs, and Wilson to support its position that Plaintiff had been training for and participating in triathlon events during the time she claimed to be disabled. Defendant states that the information provided by Mr. Meigs was verified as accurate. According to Mr. Meigs, Plaintiff trained for and participated in various triathlons from 2001 to 2003. Mr. Meigs also reported that he observed Plaintiff bicycling through the sand for 40 mile training rides twice a week, running, swimming, landscaping, typing and painting. Wilson independently verified that Plaintiff participated in the Half Vineman Triathlon in July 2001 and the St. Anthony Triathlon in April 2003.

Finally, Defendant emphasizes that Plaintiff has failed to file an affidavit denying that she made material misrepresentations to Dr. Berry. Defendant asserts that the absence of an affidavit by Plaintiff supports its position that the Administrative Committee's decision was not arbitrary and capricious.

After a review of the briefs and administrative record, the court concludes that the facts necessary to determine the materiality of Plaintiff's alleged misrepresentations are in dispute. Plaintiff has proffered sufficient contradictory evidence to raise factual disputes regarding Defendant's claim of a material misrepresentation.

Significantly, Plaintiff points out that Dr. Berry relied upon numerous medical reports by other physicians in drafting his report on Plaintiff's disability. In one of the attachments to Dr. Berry's

report, there is a progress note from John M. Rayhack, M.D. ("Dr. Rayhack") dated May 2, 2001 which indicates that Plaintiff is a runner and triathlete. (D-0179) Dr. Rayhack also reported in July 25, 2001 that Plaintiff stated her "JAS splint helps only a bit. I don't feel the pain when I run." (D-0188) In a note from Kenneth M. Alo, M.D. ("Dr. Alo"), dated October 29, 2001, Dr. Alo remarks that Plaintiff "is a triathlete." (D-0226) Unlike Payne, this court cannot determine as a matter of law that Plaintiff's medical records establish that Plaintiff misrepresented her physical activities and limitations.

Although the Administrative Committee did confirm Mr. Meigs' claims that Plaintiff participated in a triathlon in July 2001 and another triathlon in April 2003, the Administrative Committee did not independently verify Mr. Meigs' allegations regarding Plaintiff's training and physical activity.[19]

In addition, Plaintiff points out that the Administrative Committee may have relied on Mr. Meigs' claim even though some of the information he provided was inaccurate. (Dkt. 34 at 6-7) A review of the interview notes between Wilson and Mr. Meigs reveals that Plaintiff's former husband inaccurately reported Plaintiff's triathlon activities and races according to Plaintiff. (D-0059-66) In particular, Mr. Meigs erroneously reported to Wilson that

---

[19] It could be significant to a trier of fact, as Plaintiff notes, that one triathalon Plaintiff participated in was nineteen months prior to Dr. Berry's examination; the other was four months after the examination.

Plaintiff participated in the St. Anthony's triathlon in 2002, and races in Clermont, Davis Island, and Panama City in 2002. (D-0059-60) Similarly, Plaintiff argues that Mr. Meigs alleged that Dr. Rayhack told Plaintiff that her disability was all in her head and that there was nothing wrong with her wrist. (D-0059)  The trier of the fact could find that Plaintiff's medical records contradict Mr. Meigs' claims that Plaintiff was "faking it."  In fact, Dr. Berry concluded in his report that Plaintiff suffered from RSD and noted that five different physicians diagnosed Plaintiff with this disorder. (D-0087)

Unlike <u>Mims</u>, Defendant has not submitted an affidavit or deposition testimony from an underwriter stating that Plaintiff's alleged misrepresentations to Dr. Berry regarding her triathlon activities, zero grip strength, and medication regimen are material misrepresentations affecting the insurer's risk.[20]  Nor does Defendant cite to underwriting policy guidelines or manuals to bolster its argument that, as a matter of law, Plaintiff made a material misrepresentation when she failed to disclose her triathlon participation.

In opposing Defendant's motion, Plaintiff also argues that, in order for an insurer to rescind a policy due to a misstatement in

_____

[20] As the Eleventh Circuit opined in <u>Fernandez</u>, an affidavit submitted by a party in support of a summary judgment motion may be insufficient to support an insurer's burden that the insured made a material misrepresentation.  <u>Fernandez</u>, 906 F.2d at 568.  An after-the-fact affidavit may be nothing more than a retroactive attempt to bolster the insurer's position.  <u>Id.</u>

the insured's application, the misrepresentation or omission must be in response to an insurer's request for information.  <u>William Penn Life Ins. Co. v. Sands</u>, 912 F.2d 1359, 1364 (11th Cir. 1990); <u>see also</u> <u>Roess v. St. Paul Fire and Marine Ins. Co.</u>, 383 F. Supp. 1231, 1237 (M.D. Fla. 1974)(under the common law rule, insurer has the duty to make an inquiry concerning matters deemed by it to be material to the risk).   An insured is entitled to presume that information not requested is deemed immaterial.   <u>Roess</u>, 383 F. Supp. at 1237.  Where no inquiry is made about the matters to have been concealed, the insurer may avoid the policy by proving that the concealment was in fact material.  <u>Id.</u>

Here, there is a question of fact regarding what inquiries Dr. Berry made during the medical examination, in particular regarding Plaintiff's triathlon participation and training.  Dr. Berry advised Curtis that Plaintiff's participation in two triathlons were inconsistent with her statements to him during the December 16, 2002 examination.   In turn, Curtis reported her conversation with Dr. Berry to Wilson, who in turn reported this information to the Administrative Committee.  Whether the Administrative Committee had a reasonable basis to rely upon Dr. Berry's verbal opinion is unclear.  From the record, it is unclear whether the Administrative Committee examined and evaluated Dr. Berry's underlying basis for his verbal opinion.

In contrast to Dr. Berry's verbal opinion that Plaintiff's triathlon participation was inconsistent with Plaintiff's prior

statements to him, Dr. Berry wrote extensively in his December 16, 2002 report that there was a definite decreased movement in Plaintiff's right upper extremity, there was marked weakness in her right shoulder, her grip strength was almost non-existent, and that there were measurable differences in the diameter and skin of Plaintiff's right arm compared to her left arm. (D-0099) Dr. Berry concluded that he had no doubt that Plaintiff had decreased function, skin changes and muscle atrophy in her upper extremity. (Id.) According to Dr. Berry's detailed report, Plaintiff would not regain the muscular function that would ever allow her to return to flying duties. (Id. at D-0087)

If Dr. Berry limited his inquiries to Plaintiff's physical condition and limitations as they relate to her ability to pilot an airplane, a trier of fact could find that Plaintiff's participation and training may not be material to the risk undertaken by Defendant. Thus, even assuming that Plaintiff failed to disclose information regarding her physical activities and limitations, there are factual disputes whether this misrepresentation is material in deciding to terminate Plaintiff's benefits.

Furthermore, contrary to Defendant's position, Plaintiff's medical records may be relevant in deciding whether the Administrative Committee had a rational basis to deny Plaintiff disability benefits. The Administrative Committee reinstated Plaintiff's benefits based upon Dr. Berry's report, which relied upon Plaintiff's prior medical records. Dr. Berry determined

34

Plaintiff was eligible for reinstatement of benefits on three grounds: RSD of her right extremity, depression, and her medications. In terminating Plaintiff's benefits, the Administrative Committee based its decision, in part, on Dr. Berry's report. If Plaintiff's alleged misrepresentations or omissions would not have affected Defendant's acceptance of risk because other grounds existed for continuing benefits, then Plaintiff's non-disclosures are not material misrepresentations. As such, Plaintiff's medical records are germane to the issue of materiality of Plaintiff's omissions or non-disclosures.

In sum, there are factual disputes which preclude the granting of summary judgment as to the materiality of Plaintiff's misrepresentations or non-disclosures concerning her physical activities and limitations. Accordingly, in light of these disputed facts, the court cannot make a determination on whether there was a reasonable basis for the Administrative Committee's decision to terminate Plaintiff's benefits.

      2.    Representation by Plaintiff Concerning
             Her Impairment to Her Wrist

Defendant alleges that Plaintiff also misrepresented her grip strength and level of exercise activity to Dr. Berry. Due to Plaintiff's triathlon activity, which Defendant argues necessarily requires the use of her right wrist, Defendant asserts that Plaintiff's representation to Dr. Berry that her grip strength was almost nonexistent was false. In Defendant's view, Plaintiff's misrepresentation or non-disclosure to Dr. Berry about her grip

35

strength is a material misstatement because it relates to her ability to manipulate the thrust lever.

Plaintiff counters that there is no evidence in the record to support Defendant's assertion that Plaintiff informed Dr. Berry she had almost no grip strength. Instead, Plaintiff contends that Dr. Berry's opinion regarding Plaintiff's grip strength stems from his extensive physical examination of Plaintiff. Dr. Berry's report provides in pertinent part that:

> There was a marked weakness in the right shoulder, biceps triceps, forearm and hand when compared to the left upper extremity. Right hand grip strength was almost non-existent. Right bicep was 1 inch less in diameter than the left. Right midforearm was 2 inches less in diameter than the left. The skin over the right forearm was definitely different from the left.

(D-0099) Likewise, Dr. Berry's summary notes discuss Plaintiff's decreased strength of the right arm, hand grip, shoulder and muscle wasting in the entire right arm. (D-0262; Dkt. 48 at 14-15) Dr. Berry's report includes a notation that Plaintiff has to wear a splint to brace her arm. (D-0092) Also, Plaintiff contends that the medical records establish that Plaintiff was treated with a splint, and that she used this splint to brace her arm during exercise. (D-0099; D-0103-0111, D-0143) Plaintiff adds that, in reaching his opinion, Dr. Berry was not asked whether Plaintiff could compete in a triathlon using a splint.

Here, Plaintiff's medical records, including Dr. Berry's report, do not establish as a matter of law that Plaintiff made a

material misrepresentation about her grip strength.  Likewise, Mr. Meigs' claims about Plaintiff's activities and Defendant's independent verification of Plaintiff's participation in the triathlons do not prove Plaintiff made a material misrepresentation. As previously discussed, the court will not consider Dr. Berry's unsigned affidavit or paragraph 16 of the Miles affidavit.

Given the objective evidence contained in Dr. Berry's report relating to the condition of Plaintiff's right arm, it is unclear whether Dr. Berry's opinion on grip strength was derived from his physical examination of Plaintiff and his review of her medical history, or whether Dr. Berry based his opinion on Plaintiff's statements or non-disclosures.  There is a factual dispute regarding what inquiries Dr. Berry made about Plaintiff's grip strength during the physical examination.   A trier of fact could find that Plaintiff's competition in triathlons does not necessarily prove that she misrepresented her grip strength to Dr. Berry.  Whether Plaintiff could compete in a triathlon using a brace, and whether Plaintiff's ability to compete in a triathlon constituted a material misrepresentation about her grip strength are factual disputes.

Whether Plaintiff made a material misrepresentation or non-disclosure concerning her grip strength raises triable issues of material facts.  Thus, because there are disputed facts relating to Plaintiff's alleged material misrepresentation or non-disclosure, this court cannot decide if the decision to terminate Plaintiff's benefits was rational and made in good faith.  Therefore, it is

inappropriate to grant summary judgment on this issue.

>    3.    Statements by Plaintiff Concerning
>          Her Medication Regimen

According to Defendant, Plaintiff told Dr. Berry "that her condition had not improved over the last year and a half, and that she was taking strong pain medications." (Dkt. 29 at 10) Defendant argues that, even though Plaintiff represented to Dr. Berry that she was on heavy medications, Plaintiff participated in a triathlon for three hours.   Defendant contends that Dr. Berry considered Plaintiff's representations or non-disclosures concerning her medication regimen to be inconsistent with her triathlon results.

In response to Defendant's assertions, Plaintiff argues that Dr. Berry was never asked to consider whether Plaintiff's medications would alleviate pain so as to allow Plaintiff to participate in triathlons.  Dr. Berry's report indicates Plaintiff was taking Lamictal, Valium, Vicodin and Xanax. (D-0087)  Although Dr. Berry's report concluded that Plaintiff's medications alone disqualified her to pilot an aircraft, Plaintiff emphasizes that the report and Dr. Berry's verbal opinion do not include any findings as to the effect of the medications on her physical activities.

A review of the arguments and evidence demonstrates that genuine issues of material fact exist as to what Dr. Berry asked Plaintiff regarding her medications and whether these medications enabled Plaintiff to compete in triathlons.  In light of these triable issues of material fact, the court should not grant summary judgment.

**CONCLUSION**

While recognizing that the arbitrary and capricious standard raises a high bar for a plaintiff to overcome in an ERISA case involving a denial of disability benefits, this court concludes that there are genuine issues of material fact as to whether there is a reasonable basis for the Plan's conclusion that Plaintiff made one or more material misrepresentations in connection with her application for disability benefits. These factual disputes preclude summary judgment for either side in this case based on the evidence and arguments presented.

It is therefore **RECOMMENDED** that:

> (1)  Plaintiff's Motion for Summary Judgment (Dkt. 32) be **DENIED**;

> (2)  Defendant's Cross-Motion for Summary Judgment (Dkt. 28) be **DENIED**; and,

(3) Plaintiff's Motion to Strike Paragraph 16 Affidavit of Karen Miles (Dkt. 34) be **GRANTED**.


ELIZABETH A JENKINS
United States Magistrate Judge

Dated: September 20th, 2005
Case No. 8:03-CV-2587-T-17EAJ


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. 636 (b)(1).